**United States District Court**
**District of Maine**

| | |
|---|---|
| CLAUDE BERUBE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: _____ |
| ) | |
| MAINE DEFENSE INDUSTRY ALLIANCE; ) | |
| ) | |
| AND ) | |
| ) | |
| MAINE COMMUNITY COLLEGE SYSTEM; ) | |
| BATH IRON WORKS CORPORATION, D/B/A ) | |
| GENERAL DYNAMICS BATH IRON ) | |
| WORKS; DEPARTMENT OF THE NAVY, ) | |
| D/B/A PORTSMOUTH NAVAL SHIPYARD; ) | |
| PRATT & WHITNEY NORTH BERWICK AERO ) | |
| SYSTEMS; UNIVERSITY OF MAINE SYSTEM; ) | Judge: _____ |
| MAINE MARITIME ACADEMY; THE ROUX ) | |
| INSTITUTE, NORTHEASTERN UNIVERSITY; ) | |
| MAINE DEPARTMENT OF ECONOMIC & ) | |
| COMMUNITY DEVELOPMENT; ) | |
| MAINE DEPARTMENT OF EDUCATION; ) | |
| MAINE DEPARTMENT OF LABOR; MAINE ) | |
| INTERNATIONAL TRADE CENTER; ) | |
| ) | |
| AND ) | |
| ) | |
| DAVID DAIGLER; AND ) | |
| COLEMAN LAPOINTE ) | **COMPLAINT** |
| ) | |
| Defendants. ) | |
| ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NOW COMES THE PLAINTIFF** Claude Berube ("Plaintiff" or "Dr. Berube"), by and through his undersigned counsel, and brings this action against:

(a) the Maine Defense Industry Alliance ("MDIA") and its constituent Member Organizations, *to wit*: Maine Community College System ("MCCS"); Bath Iron Works Corporation, d/b/a General Dynamics Bath Iron Works ("GDBIW"); Department of the Navy d/b/a Portsmouth Naval Shipyard; Pratt & Whitney North Berwick Aero Systems; Maine Maritime Academy; The Roux Institute, Northeastern University; Maine Department of Economic & Community Development ("DECD") ; Maine Department of Education ("DoE"); Maine Department of Labor ("DoL"); Maine International Trade Center ("MITC") (collectively the "MDIA Board");

(b) David Daigler, personally and in his capacity as a Co-Chair, MDIA Board of Directors; and,

(c) Coleman Lapointe personally and in his capacity as a Co-Chair, MDIA Board of Directors (collectively the "Co-Chair Defendants")

Collectively, MDIA, the MDIA Board, and the Co-Chair Defendants are the "Defendants," as follows:

## NATURE OF THE CASE

1. This case arises from Defendant's conduct, but more broadly the outrageous, negligent, reckless, irresponsible, and wrongful conduct of Co-Chair Defendants Messrs. David Daigler and Coleman Lapointe, for breach of contract, detrimental reliance / promissory estoppel, defamation, intentional interference with business relations, and wrongful inducement when they made false statements to induce Dr. Berube to contract for employment with MDIA.  Dr. Berube detrimentally relied on the false statements made by Co-Chair Defendants Messrs. Daigler and LaPointe, causing him permanent and long-standing economic harm and irreversible damage to

his personal and professional reputation.

## PARTIES

2.      Plaintiff is a resident of the State of Maine; however, at the time of contract and the corpus of the facts underlying this case, he was a resident of the State of Maryland.

3.      Dr. Berube has more than three decades of professional experience, with specific expertise in Navy training and education, intelligence programs, research & development, and federal procurement and acquisitions. He also has extensive experience serving as a staff member on Capitol Hill, including being on the staff of two United States Senators and a member of the House of Representatives. He is a prominent and published naval historian with two decades as an Associate Professor at the U.S. Naval Academy until June 2024. He is a retired Navy Commander with exemplary service. He has a unique combination of private sector, federal service, and military service. He has maintained throughout his life an extensive network of professional and personal relations in the State of Maine and had a parent who served for thirty years in the Maine legislature.

4.      Defendant MDIA is a not-for-profit corporation incorporated under 13-B MRSA § 403 in the State of Maine with its principal place of business at 2 Portland Fish Pier, Portland, Maine and its Commercial Registered Agent address at 2 Canal Place, Portland, Maine 04112.

5.      Defendant Bath Iron Works Corporation, d/b/a General Dynamics Bath Iron Works ("GDBIW"), is a Maine business entity with its primary place of business located at 700 Washington Street, Bath, Maine 04530-2556.

6.      Defendant Portsmouth Naval Shipyard is a shipyard in Kittery, Maine, which belongs to the Department of the Navy, Naval Sea Systems Command (NAVSEA), with its primary place

of business located at 1333 Issac Hull Avenue SE, Washington Navy Yard, Washington, District of Columbia 20376. The address for the Department of the Navy is 1000 Navy Pentagon, Washington, District of Columbia 20350-1200.

7. Defendant Pratt & Whitney North Berwick Aero Systems is a Maine business entity with its primary place of business located at 113 Wells Street, North Berwick, Maine 03906.

8. Defendant Maine Community College System (MCCS) is a Maine business entity with its primary place of business located at 323 State Street, Augusta, Maine 04330.

9. Defendant Maine Maritime Academy (MMA) is a Maine business entity with its primary place of business located at 1 Pleasant Street, Castine, Maine 04420.

10. Defendant The Roux Institute, Northeastern University is a Maine business entity with its primary place of business located at 100 Fore Street, Portland, Maine 04101.

11. Defendant Maine Department of Economic & Community Development (DECD) is a Maine government entity with its primary place of business located at Burton Cross Building, 3rd Floor, 111 Sewall Street, Augusta, Maine 04330-6840 and a mailing address of 59 State House Station, Augusta, Maine 04333-0059.

12. Defendant Maine Department of Education (MDOE) is a Maine government entity with its primary place of business located at 111 Sewall Street, Augusta, Maine 04333-0023 and mailing address 23 State House Station, Augusta, Maine 04333-0023.

13. Defendant Maine Department of Labor (MDOL) is a Maine government entity with its primary place of business located at 45 Commerce Drive, Augusta, Maine and its mailing address at 54 State House Station, Augusta, Maine 04333-0054.

14. Defendant Maine International Trade Center (MITC) is a nonprofit corporation under 13-B MRSA § 403 in Maine with its primary place of business located at 2 Portland Fish Pier, Suite 204, Portland, Maine 04101.

15. Defendant David Daigler is a resident of the State of Maine, and currently serves as the Co-Chair of the MDIA Board of Directors and is also the President of the Maine Community College System (MCCS). He is sued both in his official and personal capacities.

16. Defendant Coleman Lapointe is a resident of the State of Maine, and currently serves as the Co-Chair of the MDIA Board of Directors. He is sued both in his official and personal capacities.

## JURISDICTION AND VENUE

17. Plaintiff has not filed any other actions in any courts of law regarding the subject of this action.

18. This Court has jurisdiction pursuant to the United States Constitution, Article III, Section 2; and, to 28 U.S.C. §§ 1331 and 1332.

19. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine.

20. Under Local Rule 3(b), this action is properly filed in Portland because a substantial part of the events or omissions giving rise to the claims occurred in Cumberland and/or Sagadahoc County.

## STATEMENT OF FACTS

21. In March 2024, Dr. Berube applied for employment as the Executive Director of MDIA. The primary person with whom Dr. Berube worked regarding this position was Ms. Johnna

Major, an executive search / human resources specialist whom MDIA through Co-Chair Defendants Messrs. Daigler and LaPointe retained as a consultant for this purpose.

22. At the time of his application, Dr. Berube was a full-time government employee working for the United States Naval Academy with a recurring term appointment, with the current term lasting through June 2025.

23. On April 16 2024, Plaintiff interviewed in person in Portland, Maine, after a series of online interviews, with the Co-Chair Defendants Messrs. Daigler and LaPointe, Plaintiff was verbally offered the Executive Director position with a written offer of employment to be made in the coming weeks, and Plaintiff tentatively accepted the offer.

24. Dr. Berube informed the Co-Chair Defendants that he had non-reimbursable vacation plans from July 5, 2024, to July 19, 2024, and that he had to conduct various business transactions to complete his move for the position, including purchasing a home in Bath, Maine, and selling his home in Annapolis, Maryland, to accommodate Messrs. Daigler and LaPointe's expectations that he start work as soon as possible.

25. The Co-Chair Defendants were anxious for Dr. Berube to begin work, given the interim executive director Mr. Wade Merritt was departing in June, 2024. Dr. Berube informed MDIA that since the interview/selection process had taken more time than anticipated, that he (a) was completing teaching a course of instruction at the Naval Academy that concluded on June 21, 2024, and (b) that he needed some time to complete the administrative requirements to retire from federal civilian employment.

26. On May 13, 2024, Dr. Berube and Defendant MDIA, through its designated officers Co-Chair Defendants facilitated by Ms. Major, executed a mutually beneficial employment contract (the "Employment Contract." (Exhibit "A")).

27. The Employment Contract provided:

    a. Employment as an exempt employee working approximately 10 hours per week for six weeks, beginning on June 3, 2024, and continuing until July 19, 2024, with a bi-weekly salary of $1,923.00.

    b. Full-time employment as an exempt employee beginning on July 20, 2024, with a bi-weekly salary of $7,692, "which is equivalent to $200,000 annually."

    c. A discretionary performance-based annual bonus of up to 20% of his annual salary.

    d. A relocation allowance of $8,000.

    e. Provisions for "leave as needed to meet [his] needs for holiday observances and personal time off."

28. The two conditions precedent for Dr. Berube's employment were that he (a) complete a Department of Homeland Security Form I-9 (verifying his right to work in the United States), and (b) satisfactorily completed a verification and background check. Dr. Berube completed the two conditions precedent on or before June 3, 2024.

29. On May 24, 2024, Ms. Major introduced to Dr. Berube by email Ms. Noel Gallagher, a public affairs staff member for Co-Chair Defendant Daigler in his position as President, MCCS. Ms. Gallagher contacted Dr. Berube to provide input on a press release, which Plaintiff provided.

30. As is standard practice when federal employees secure employment outside the federal government and/or retire from government service, and based on his previous knowledge of and experience with federal ethics guidelines including outside employment, on May 26, 2024, Dr. Berube informed his chain of command and the Navy Designated Ethics Official (the "DEO" or

7

"CAPT House") that he intended to have outside employment beginning June 3 for approximately 10 hours per week until he retired from federal service on June 21, 2024.

31. On May 31, 2024, the DEO opined that Plaintiff was not prohibited from part-time outside employment with MDIA ("the Ethics Letter" or "The House Memo"). The Ethics Letter also set forth the standard post-government ethics restrictions, none of which applied to Plaintiff.

32. On June 3, 2024, Mr. Merritt, MDIA interim executive director, verified Dr. Berube's employment with MDIA as part of a "Request for Verification of Employment" for Dr. Berube's new home he purchased in Bath, Maine ("Exhibit B").

33. On June 4, 2024, Ms. Gallagher asked Plaintiff for a headshot for the website. Given Plaintiff's then current employment with the U.S. Naval Academy and seeking solely to protect MDIA and to avoid even the appearance of a conflict of interest, Plaintiff requested that the website update listing him as the MDIA Executive Director be delayed until June 24, 2024, after the last day of his employment with USNA. However, Dr. Berube stated that it would be appropriate to issue the intended press release that stated that he had been hired for the position. Dr. Berube was asked to provide a statement for the press release, which he did.

34. On June 6, 2024, Co-Chair Defendants and Ms. Major had a telephone meeting with Dr. Berube to discuss Co-Chair Defendants' concern about the MDIA website update. In that call, Plaintiff informed Co-Chair Defendants that he obtained the Ethics Letter to ensure that both he and MDIA would be clear of even a perceived conflict of interest since some people may not be able to distinguish the rules of federal ethics; Dr. Berube informed them that he had filed outside employment requests with the Academy twice before and was well familiar with the process and guidelines. Delaying publication of the website update until June 24, 2024, would easily accomplish the goal of avoiding even a perceived conflict of interest, and no actual conflict of

interest existed. Dr. Berube offered to Co-Chair Daigler during the phone meeting, as he had previously to Ms. Major and Co-Chair Lapointe in previous separate phone meetings, to immediately resign from the Naval Academy to alleviate any concern he may have. Mr. Daigler flatly rejected Dr. Berube's offer. At the conclusion of the conversation, Dr. Berube offered to provide the Ethics Letter, and Mr. Daigler accepted that offer.

35. Later on June 6, 2024, Co-Chair Defendant Lapointe texted Dr. Berube: "This is a non-issue."

36. Additionally, also on or about June 6, 2024, Ms. Major called Dr. Berube and said MDIA would simply write a new offer with a start date of June 24, 2024. However, this offer was never written or presented to Dr. Berube.

37. Dr. Berube was scheduled to meet with the Interim Executive Director to discuss transition issues in the morning and to meet with the Co-Chair Defendants in the afternoon of June 10, 2024, in Portland, Maine.

38. On June 9, 2024, in a telephone call through Ms. Major, Co-Chair Defendant Daigler canceled the meetings. Both Co-Chair Defendants knew that Dr. Berube already was in Bath, Maine at the time, on official leave from his position at USNA, to comply with the scheduled meeting with them on the 10th and to conduct the final walk-through inspection for his new home.

39. On June 11, 2024, Dr. Berube completed the purchase of his home in Bath, Maine. The sole reason he purchased the property at this time was to be present in Bath to perform the duties as Executive Director of MDIA.

40. On June 13, 2024, via telephone call with Co-Chair Defendants and Ms. Major, Co-Chair Defendant Daigler unilaterally informed Dr. Berube that he was in material breach of the contract and that MDIA was "not moving forward with engagement."

41. Co-Chair Defendant Daigler, in a threat of deliberate damage to Dr. Berube's professional reputation, stated, "Maine is a small state, and we wouldn't want your reputation damaged so we think you should withdraw your acceptance," or words to that effect. Dr. Berube stated that since he had just been fired by Co-Chair Defendant Daigler, that withdrawing or not withdrawing was moot and that Co-Chair Defendant Daigler had incorrectly interpreted and understood the Ethics Letter. Co-Chair Defendant Lapointe then stated, "We think you should reconsider and help us with messaging this," or words to that effect.

42. On June 13, 2024, later in the day Co-Chair Defendant Lapointe alone called Dr. Berube again, pressuring Dr. Berube to resign from his position. Dr. Berube stated that since he had already been "fired" from his position by Co-Chair Defendant Daigler earlier in the afternoon, he could not, therefore, resign, and that since he now had legal representation it was inappropriate for them to have further direct communications.

43. Section 6.6 of the MDIA Bylaws indicates the Executive Director "… is subject to the supervision and control of, and reporting to, the Board Co-Chairs acting with the advice and consent of the Board of Directors."

44. Insofar as the Co-Chair Defendants acted with and under the authority of the Board of Directors to hire Dr. Berube pursuant to section 6.6 of the Bylaws, the Board of Directors must approve the termination of Dr. Berube's employment.

45. On or about June 18, 2024, in a telephone call with a representative of the Department of Navy program office funding MDIA, Co-Chair Defendant Lapointe threatened to ruin Dr.

Berube's professional and personal reputation not only in Maine but in Washington, D.C. as well.

46. After his termination, Dr. Berube learned from Ms. Major that the Co-Chair Defendants failed to disclose a material fact of Dr. Berube's employment that the Department of the Navy had only funded the MDIA Executive Director position for nine months – a period significantly less than the intended and mutually understood term of Dr. Berube's employment with MDIA.

## COUNT I
*Plaintiff vs. Defendants*
**Breach of Contract**

47. Plaintiff incorporates the preceding paragraphs and allegations as if fully set forth herein.

48. On May 13, 2024, MDIA, through its authorized representatives, offered Dr. Berube the position of Executive Director.

49. On May 13, 2024, Plaintiff accepted Defendant MDIA's offer of employment as the MDIA Executive Director.

50. From May 13, 2024, until Co-Chair Defendant Daigler fired Dr. Berube from his position of Executive Director on June 13, 2024, Dr. Berube took substantial steps to fulfill the Employment Contract:

    a. Dr. Berube completed the I-9 employment form.

    b. Dr. Berube completed all requirements for MDIA to complete a background check.

    c. Beginning June 3, 2024, through the termination on June 13, 2024, Dr. Berube continued to have telephone, text, and email contact with Ms. Major, Co-Chair Defendants, Mr. Merritt, and other MDIA members regarding his duties at MDIA in fulfillment of the Employment Contract. Specifically, Dr. Berube coordinated with MDIA officials to come to Maine on June 9,

2024, to meet with the Acting Executive Director and the Defendant Co-Chairs on June 10, 2024, in fulfillment of the Employment Contract.

      d.      Dr. Berube contracted for the sale of a home in Maryland and for the purchase of a home in Bath, Maine.

      e.      Dr. Berube packed up his household goods in Annapolis, Maryland, and moved them to Maine on June 25, 2024. He later closed on his Annapolis home on July 16, 2024.

**WHEREFORE**, Plaintiff demands judgment in his favor and against the MDIA Defendants in an amount that exceeds $1,000,000.

## COUNT II
### *Plaintiff vs. Defendants*
### Detrimental Reliance / Promissory Estoppal

51. Plaintiff incorporates the preceding paragraphs and allegations as if fully set forth herein.

52. On May 13, 2024, Dr. Berube and Defendant MDIA, through its designated officers Co-Chair Defendants Messrs. Daigler and Lapointe, executed a mutually beneficial Employment Contract (Exhibit "A") (the "promise") wherein Plaintiff was to work as an exempt employee part-time for six weeks beginning on June 3, 2024, and continuing until July 19, 2024, with a bi-weekly salary of $1,923.00.  Thereafter, Dr. Berube was transitioning to employment beginning on July 20, 2024, with a bi-weekly salary of $7,692.  Plaintiff was also to receive a discretionary performance-based annual bonus of up to 20% of his annual salary based on the fiscal year, a relocation allowance of $8,000, and annual leave "as needed to meet [his] needs for holiday observances and personal time off."

53. On or before June 3, 2024, Dr. Berube fulfilled the two MDIA conditions precedent for employment: (a) complete a Department of Homeland Security Form I-9 (verifying his right to

work in the United States), and (b) satisfactorily completing a verification and background check.

54. MDIA confirmed by its actions that it intended Dr. Berube to begin his employment with MDIA when it confirmed Dr. Berube's employment with MDIA with Dr. Berube's mortgage broker so that Dr. Berube could purchase a home in Bath.

55. Given the mutually agreed upon terms, the execution of the employment contract between Plaintiff and MDIA, MDIA's verification of Dr. Berube's employment with MDIA, and work Dr. Berube did with and for MDIA coordinating his work transition, Dr. Berube reasonably relied on MDIA's conduct and representations to his detriment.

56. As a result of Dr. Berube's detrimental reliance on MDIA's offer of employment, Dr. Berube resigned his position with the United State Naval Academy, retired from federal government service, purchased a home in Bath, Maine, and sold his primary residence in Annapolis, Maryland. Dr. Berube would not have undertaken these four major life events at that time but for MDIA's bad faith acts in the wrongful termination of his employment contract.

57. Upon information and belief, we believe Dr. Berube has suffered and will continue to suffer professionally insofar as he has not found full-time employment in his field of expertise in Maine after MDIA's bad faith termination of Dr. Berube's employment.

**WHEREFORE**, Plaintiff demands judgment in his favor and against the MDIA Defendants in an amount that exceeds $1,000,000.

### COUNT III

*Plaintiff vs. the Co-Chair Defendants (Messrs. Daigler and LaPointe)*
**Defamation**

58. Plaintiff incorporates the preceding paragraphs and allegations as if fully set forth herein.

59. Upon information and belief based, Co-Chair Defendants negligently, recklessly, falsely, and maliciously communicated to those present and hearing that Dr. Berube had committed fraud on MDIA by failing to disclose that he was subject to federal government ethics restrictions and additional defamatory statements regarding his honesty and integrity. As described in the Ethics Opinion, Dr. Berube was not subject to the federal procurement ethics restrictions. The Ethics Opinion also provided guidance to Dr. Berube as to matters and issues to avoid so that he remained clear of potential violations of the federal procurement ethics laws.

60. The Co-Chair Defendants communicated these false statements to those present solely to defame Dr. Berube. Specifically, Mr. LaPointe wanted to pursue petty grievances against Dr. Berube because, now realizing his and Mr. Daigler's outrageous, negligent, reckless, irresponsible, and wrongful conduct, wanted to cover his acts to try and avoid personal responsibility and potential professional embarrassment.

61. Upon information and belief, because of Co-Chair Defendants' defamatory statements, Dr. Berube has been unable to find full-time employment in his field of expertise related to the conduct of government and legislative business in the State of Maine and/or Washington, D.C.

62. Upon information and belief, because of Co-Chair Defendants' defamatory statements, Dr. Berube has suffered and will continue to suffer harm to his reputation, lowering his reputation in the eyes of Dr. Berube's personal, social, and business communities and has likely deterred one or more of those individuals from associating with or conducting business with Dr. Berube, because "Maine is a small state, and we wouldn't want your reputation damaged …"

**WHEREFORE**, Plaintiff demands judgment in his favor and against Co-Chair Defendants in an amount exceeding $1,000,000.

## COUNT IV

*Plaintiff vs. Defendants*

**Tortious Interference with Business Relations**

63. Plaintiff incorporates the preceding paragraphs and allegations as if fully set forth herein.

64. Dr. Berube is a noted historian and published author with an expert breadth and depth of knowledge of the maritime industry and the U.S. Navy. He has been called upon as a consultant and has spoken as an expert before academic and intellectual organizations including "think tanks," other professional organizations, and media. As a naval officer, as Congressional professional staff, defense contractor, and as a federal employee, his ethics, knowledge, vision, and capabilities were valued commodities. He has more than thirty years as a civil servant, navy officer, and defense contractor, and is a highly qualified subject matter expert. Defendants deemed his professional and personal connections both in Washington DC and Maine necessary and critical for the position.

65. Defendants employed Dr. Berube to be the MDIA Executive Director precisely because of Dr. Berube's unrivaled breadth and depth of knowledge of the maritime industry, the U.S. Navy, strategic government/public/private relations and affairs, and the history of the United States Navy as compared to the approximately other 250 applicants for the position.

66. On or about June 13, 2024, MDIA, acting through its Co-Chair Defendant Daigler, in the presence of Ms. Major, unlawfully attempted through intimidation to induce Dr. Berube to resign from his position as Executive Director, MDIA. The Co-Chair Defendants threatened to damage to Dr. Berube's professional and personal reputation if he did not voluntarily resign his position despite Co-Chair Defendant Daigler already terminating his employment with MDIA earlier during the meeting. Co-Chair Defendant Daigler knew or should have known that Dr. Berube had

not violated any provision in his Employment Contract; yet, he chose to threaten and intimidate Dr. Berube without cause or justification.

67. On or about June 13, 2024, MDIA, acting through its Co-Chair Defendant Lapointe, likewise, called Dr. Berube, attempting to get Dr. Berube to resign from his position as the MDIA Executive Director, even though Dr. Berube had fulfilled all the terms and conditions of his employment contract with MDIA and even though Mr. Daigler had already fired him from his position.

68. Upon information and belief, through Co-Chair Defendants' untruthful and misleading comments to many people, including third-parties unrelated to MDIA, Co-Chair Defendants deliberately have interfered with Dr. Berube's continuance as a federal employee with full benefits and ability to seek and obtain employment, including but not limited to independent contract employment, to the maritime and defense contracting industries, causing Dr. Berube to suffer severe economic harm.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Co-Chair Defendants in an amount exceeding $1,000,000.

## COUNT V
*Plaintiff vs. Defendants*
**Fraud in the Inducement**

69. Plaintiff incorporates the preceding paragraphs and allegations as if fully set forth herein.

70. On May 13, 2024, Dr. Berube and Defendants, through its designated officers Co-Chair Defendants, executed a mutually beneficial Employment Contract (Exhibit "A") (the "Promise") wherein Plaintiff was to work for six weeks, beginning on June 3, 2024, and continuing until July 19, 2024, with a bi-weekly salary of $1,923.00 which would continue on July 20, 2024, with

a bi-weekly salary of $7,692.  Plaintiff was also to receive a discretionary performance-based annual bonus of up to 20% of his annual salary based on the fiscal year, a relocation allowance of $8,000, and annual leave "as needed" to meet [his] needs for holiday observances and personal time off.

71. On or before June 3, 2024, Dr. Berube fulfilled the two MDIA conditions precedent for employment: (a) complete a Department of Homeland Security Form I-9 (verifying his right to work in the United States), and (b) satisfactorily completing a verification and background check.

72. MDIA confirmed by its actions that it intended Dr. Berube to begin his employment with MDIA when it confirmed Dr. Berube's employment with MDIA with Dr. Berube's mortgage broker so that Dr. Berube could purchase a home in Maine.

73. Given the mutually agreed upon terms, the execution of the employment contract between Plaintiff and MDIA, and MDIA's verification of Dr. Berube's employment with MDIA, Dr. Berube reasonably relied on MDIA's good faith negotiations and contract to his detriment.

74. Unbeknownst to Dr. Berube at the time he signed the Employment Contract, resigned from his position at the USNA, and retired from federal service as a civilian employee, he later learned through Ms. Major that Defendants failed to disclose to him a material condition of Dr. Berube's employment:  that the Department of the Navy had only funded the MDIA Executive Director position for nine months.  This material condition of MDIA's existence and financial health was far less than Dr. Berube had understood from Messrs. Daigler's and Lapointe's statements and actions in conducing Dr. Berube to accept MDIA's offer of employment.

75. Each of the statements, facts, and agreements which Defendants made intended to induce Dr. Berube to accept employment with MDIA, particularly those related to the financial viability of MDIA, were false.

76. As a result of Dr. Berube's reliance on Defendants, Dr. Berube resigned his position with the United State Naval Academy, retired from federal government service, purchased a home in Bath, Maine, and sold his primary residence in Annapolis, Maryland.  Each of these four events is a major life decision that Dr. Berube would not have undertaken at the time but for Defendants' false statements and misrepresentations.

77. Dr. Berube has suffered and will continue to suffer great harm and damage insofar as he has been unable to find full-time employment in Maine after Defendants' misrepresentations.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants in an amount exceeding $1,000,000.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants in an amount in excess of $1,000,000, to include:

    a. Compensatory Damages (including but not limited to):  back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

    b. Punitive damages

    c. Attorney's fees, expert witness fees, and costs.

    d. Such other relief as the Court may direct.

                                                  Respectfully submitted,
                                                  Claude Berube, Plaintiff

Dated: 11/26/2024                      By:    */s/ Gregg R. Frame*
                                                        Gregg R. Frame, Esq. Bar No.: 9291
                                                        Caihlan B. Snyder, Esq., Bar No. 6365
                                                        Attorneys for Plaintiff

                                                        Taylor, McCormack & Frame, LLC
                                                        267 Commercial Street
                                                        Portland, Maine 04101
                                                        Phone: 207-828-2005
                                                        gframe@tmfattorneys.com
                                                        csnyder@tmfattorneys.com